**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PMC PROPERTY GROUP, INC., et al.,<br>*Plaintiffs,*<br>v.<br>VIRACON, LLC, et al.,<br>*Defendants.* | CIVIL ACTION<br>NO. 26-3345 |

**Pappert, J.** **August 20, 2026**

**MEMORANDUM**

PMC Property Group, Inc. sued Wausau Window and Wall Systems, Viracon, LLC and Apogee Enterprises, Inc., alleging several claims under Pennsylvania law. The defendants move to dismiss the claims against them, and the Court grants their motion in part and denies it in part.

I

PMC Property converts commercial buildings into modern apartment complexes. (Am. Compl. ¶ 2, Dkt. No. 9.) Among its Philadelphia properties are Franklin Tower and Riverwalk, which includes Riverwalk Tower I and Riverwalk Tower II. (*Id.* ¶¶ 3–4, 21–23.) PMC Property contracted with Wausau to supply the window systems for Franklin Tower and Riverwalk Towers I and II. (*Id.* ¶¶ 5, 30.) Viracon manufactured the glass panels Wausau used in designing the window systems it supplied to PMC Property. (*Id.* ¶¶ 7, 43.) Apogee is Wausau's and Viracon's corporate parent. (*Id.* ¶ 7.) Since Franklin Tower, Riverwalk Tower I and Riverwalk Tower II opened, portions of the glass in the window systems have broken. (*Id.* ¶¶ 67–70.) PMC Property alleges that windows in dozens of apartments have shattered, causing glass to fall on sidewalks

and balconies, among other places. (*Id.* ¶¶ 1, 8.) PMC Property alleges that nickel sulfide, a byproduct of Viracon's manufacturing process, contaminated the glass causing it to break. (*Id.* ¶ 8.)

PMC Property sued Wausau, Viracon and Apogee alleging strict products liability, breach of implied warranty of merchantability, breach of implied warranty of fitness, unjust enrichment and violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law. PMC Property also seeks declarations that Wausau and Viracon are Apogee's alter egos.

II

Apogee moves to dismiss on personal jurisdiction grounds. Personal jurisdiction refers to a court's power to bind the parties before it. *Fuld v. Pal. Liberation Org.*, 145 S. Ct. 2090, 2102 (2025). Federal Rule of Civil Procedure 12(b)(2) permits a district court to dismiss claims for "lack of personal jurisdiction." To withstand a Rule 12(b)(2) motion, the "plaintiff bears the burden of establishing the court's jurisdiction over the moving defendant[]." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

A federal court may exercise personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located," so long as the exercise of jurisdiction comports with the Constitution. Fed. R. Civ. P. 4(k)(1)(A); *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). Because Pennsylvania's long-arm statute extends as far as federal due process permits, *see* 42 Pa. Stat. and Cons. Stat. Ann. § 5322(b), the only question is whether exercising personal jurisdiction over Apogee comports with the Constitution.

There are two types of personal jurisdiction: general and specific. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 & n.9 (1984). General jurisdiction permits a defendant to be sued in a particular forum for any claim, regardless of whether the claim has any connection to the forum State. *Id.* at 414 n.9. Specific jurisdiction, by contrast, is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). A court may exercise specific jurisdiction over a defendant if the plaintiff's claims "arise[] out of or relate[] to" the defendant's contacts with the forum State. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citation omitted). Only specific jurisdiction is at issue.

Specific jurisdiction has three requirements. First, the defendant's contacts with the forum State must show that it "purposely avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Second, the plaintiff's alleged injury must arise out of, or relate to, the defendant's contacts with the forum State. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021). Finally, any exercise of personal jurisdiction must comport with traditional notions of fair play and justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

PMC Property fails to satisfy the first requirement. To allege purposeful availment, a plaintiff must offer facts suggesting "'minimum contacts' between the defendant and the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). A "necessary" component of this standard is the "deliberate targeting of the forum." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir.

2007). Nothing suggests Apogee deliberately reached into Pennsylvania to target its citizens. PMC Property fails to allege, for example, that Apogee solicited its business in Pennsylvania, or targeted the Pennsylvania market generally through advertising. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003); *Ford Motor Co.*, 141 S. Ct. at 1028. Apogee neither manufactures, distributes, sells or offers any product or service in Pennsylvania, nor does it have contracts to provide services to any individual or entity in Pennsylvania. (Bryan A. Welp Decl. ¶¶ 6–7, Dkt. No. 5-3.)

In response, PMC Property invokes the alter-ego theory which holds that "if [a] parent corporation . . . controls [a] subsidiary, then personal jurisdiction exists over the parent whenever personal jurisdiction (whether general or specific) exists over the subsidiary." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018) (citation omitted). The alter-ego theory applies only if the parent corporation controls the day-to-day operations of the subsidiary, *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 300–01 (3d Cir. 2008), which means the parent "dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation," *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (citation omitted); *see also Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 450–51 (6th Cir. 2012). Courts consider the circumstances including (1) whether the parent arranges financing for and capitalization of the subsidiary, (2) whether separate books, tax returns and financial statements are kept, (3) whether the parent and the subsidiary share officers and directors, marketing, use of a logo, use of employees and/or integrated sales systems and (4) performance by the subsidiary of functions which the principal would normally conduct through its own departments. *Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 471

(E.D. Pa. 2019); *Midwest Petroleum Co. v. Am. Petrofina, Inc.*, 603 F. Supp. 1099, 1112 (E.D. Mo. 1985).

PMC Property fails to cite, let alone apply, any of these factors. It argues (among other things) that Apogee benefited from PMC Property's business with Wausau, Apogee represented Wausau in litigation, the notices PMC Property submitted seeking warranty coverage were forwarded to Apogee and Apogee dictated the language that Wausau used in its quotes. (Am. Compl. ¶¶ 53, 55, 56, 57 & 60.) None of this plausibly suggests Apogee dictated every facet of Wausau's and Viracon's businesses—from policy decisions to routine matters of day-to-day operation.[1] The Court lacks personal jurisdiction over Apogee.[2]

III

Wausau and Viracon first move to dismiss the claims against them on claim-splitting and abstention grounds.

A

In *Walton v. Eaton Corp.*, 563 F.2d 66 (3d Cir. 1977), the Third Circuit Court of Appeals held that a plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Id.* at 70. While the defendants invoke *Walton*, they fail to explain how it applies here given that PMC Property is not "maintain[ing]" two separate actions "in

[1] PMC Property also seeks declarations that Wausau and Viracon are alter egos of Apogee. But as explained above, PMC Property fails to allege sufficient facts to permit the reasonable inference that Wausau and Viracon are Apogee's alter egos.

[2] A district court that lacks personal jurisdiction must consider transferring the case. *Danziger v. De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 133 (3d Cir. 2020). But the Court need not investigate on its own all other courts that could hear the case. *Id.* No party discusses transfer, so the Court cannot determine whether transfer is appropriate.

the same court." *Id.* PMC Property sued Wausau in state court in 2024 alleging (among other things) breach of warranty, unjust enrichment and strict products liability. (State Ct. Compl., Dkt. No. 5-6.) Before discovery ended, PMC Property sought to amend its complaint, and the state court denied its motion. (State Court. Order, Dkt. No. 5-7.) PMC Property thereafter filed a second lawsuit in state court against Wausau, Viracon and Apogee, which the defendants removed to this Court. Thus, PMC Property is currently "maintain[ing]" two separate actions, not "in the same court," but in two different courts of different sovereigns. *Walton*, 563 F.2d at 70; *cf. Kanciper v. Suffolk Cnty. Soc'y for the Prevention of Cruelty to Animals, Inc.*, 722 F.3d 88, 93 (2d Cir. 2013) ("In sum, because the 'contemporaneous exercise of concurrent jurisdiction' in this case was between a state court and a federal court, claim splitting was not a theory under which the District Court could dismiss" the plaintiff's claim) (citation omitted); *Wyles v. Sussman*, 661 F. App'x 548, 552 (10th Cir. 2016) ("Here, [the plaintiff] first filed suit in state court and later filed a nearly identical suit in federal court. In dismissing the federal complaint under the rule against claim-splitting, the district court faulted [the plaintiff] for filing the federal complaint in what the district court saw as an effort to evade an unfavorable procedural ruling in state court. But such an evasive tactic is improper only when both complaints are filed in federal court."); *Sumrall v. Ali*, 793 F. Supp. 3d 199, 205 (D.D.C. 2025) (refusing to apply the claim-splitting doctrine when the two actions at issue were pending in both federal and state court); *Steinberg v. Nationwide Mut. Ins.*, 418 F. Supp. 2d 215, 223 (E.D.N.Y. 2006) ("claim splitting does not apply to parallel state and federal actions").

The defendants say only that *Pressley v. Mack Property Management*, No. 25-4817, 2026 WL 147432 (E.D. Pa. Jan. 20, 2026), supports applying *Walton* here. But in that case the plaintiff filed both of her actions in federal court. *Id.* at *1. Here, by contrast, PMC Property filed both of its complaints in state court, and the defendants removed the second action to federal court. Therefore, PMC Property is not seeking to "maintain two separate actions involving the same subject matter at the same time *in the same court* and against the same defendant." *Walton*, 563 F.2d at 70 (emphasis added).

B

In *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), the Supreme Court held a federal court may abstain from hearing a case when it involves the same parties and issues as a parallel case in state court. *Id.* at 817–20. Abstention is appropriate only if the state and federal actions involve the same parties and substantially similar claims, *Yang v. Tsui*, 416 F.3d 199, 204 n.5 (3d Cir. 2005), and extraordinary circumstances justify it, *Nationwide Mut. Fire Ins. v. George V. Hamilton, Inc.*, 571 F.3d 299, 308 (3d Cir. 2009). As an initial matter, the cases do not involve the same parties. *Ryan v. Johnson*, 115 F.3d 193, 196 (3d Cir. 1997). PMC Property's state-court suit is against Wausau and its federal-court suit is against Wausau, Viracon and Apogee. And in any event, no extraordinary circumstance justifies abstention. In determining whether extraordinary circumstances are present, courts consider various factors including, for example, whether the state court assumed *in rem* jurisdiction over any property and the inconvenience of the federal forum. *Nationwide Mut. Fire Ins.*, 571 F.3d at 308.

The Court of Common Pleas of Philadelphia County has not assumed *in rem* jurisdiction over any property. *Ryan*, 115 F.3d at 196. Nothing indicates it would be inconvenient for the defendants to litigate in federal court in Philadelphia. *Sea Colony, Inc. v. Alcan Aluminum Corp.*, 653 F. Supp. 1323, 1327 (D. Del. 1987). The defendants point to no congressional policy favoring abstention in these circumstances. *Ryan*, 115 F.3d at 198. While PMC Property's state-court lawsuit is at the summary-judgment stage, this alone does not justify abstention. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983); *Colo. River Water Conservation Dist.*, 424 U.S. at 818. PMC Property's claims against the defendants involve straightforward state law, nothing "so intricate and unsettled that resolution in the state court[] might be more appropriate." *Ryan*, 115 F.3d at 200. And even if the Philadelphia County Court of Common Pleas will protect the parties' rights, this adds little to the calculus. *Id.*

IV

Wausau and Viracon next move to dismiss the claims against them for failing to allege sufficient supporting facts. The Court assesses the sufficiency of a pleading before discovery under Federal Rules of Civil Procedure 8 and 12. Rule 8(a)(2) provides that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And Rule 12(b)(6) permits a district court to dismiss a complaint that fails "to state a claim upon which relief can be granted." *Id.* 12(b)(6). Taken together, the two rules require the plaintiff to allege sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The first step in determining whether a plaintiff has stated a plausible claim is to "tak[e] note of the elements" underlying its claim.

*Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009); *Santiago v. Warminster Township*, 629 F.3d 121, 129–30 (3d Cir. 2010). The second step is to examine the plaintiff's complaint and determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Plausibility requires the plaintiff to plead sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The reasonableness of an inference depends on common sense and the strength of competing explanations for the defendant's conduct. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016); *Iqbal*, 556 U.S. at 682. Plaintiffs do not meet the plausibility burden when the facts alleged are "merely consistent with a defendant's liability" or show nothing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). In gauging the plausibility of a claim, the Court must accept as true all well-pleaded factual allegations, construe those facts in the light most favorable to the plaintiff, and draw reasonable inferences from them. *Connelly*, 809 F.3d at 786 n.2.

A

Strict products liability requires the plaintiff to show a defective product injured him. *Phillips v. A-Best Prods. Co.*, 665 A.2d 1167, 1170 (Pa. 1995). A product is defective if it contains a manufacturing defect. *See Chandler v. L'Oreal USA, Inc.*, 774 F. App'x 752, 754 (3d Cir. 2019). A manufacturing defect means the product departs from its intended design even though the manufacturer exercised all possible care in preparing it. *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 404 (Pa. 2014). The plaintiff

must allege some kind of "breakdown in the [product] or a component thereof." *Riely v. Warren Mfg., Inc.*, 688 A.2d 221, 390 (Pa. Super. Ct. 1997).

Wausau and Viracon ask the Court to dismiss PMC Property's manufacturing-defect claim on three grounds. None is persuasive.

They first invoke the economic-loss doctrine, which prohibits buyers from bringing tort claims against sellers for economic losses arising from the product that the parties exchanged in a commercial setting. *See REM Coal Co., Inc. v. Clark Equip. Co.*, 563 A.2d 128, 133 (Pa. Super. Ct. 1989). Economic losses generally refer to non-physical commercial losses (like the money spent on a faulty product) in contrast to physical injuries to the plaintiff's person or his property other than the product itself. *Miller v. U.S. Steel Corp.*, 902 F.2d 573, 574 (7th Cir. 1990). Thus, "where a product malfunctions because of an alleged defect in the product, causing damage to the product itself," a plaintiff may not recover damages in a products liability action unless the malfunction also causes personal injury or injury to other property of the plaintiff. *REM Coal Co., Inc.*, 563 A.2d at 129; *see also Spivack v. Berks Ridge Corp. Inc.*, 586 A.2d 402, 405 (Pa. Super. Ct. 1990); *Lupinski v. Heritage Homes, Ltd.*, 535 A.2d 656, 658 (Pa. Super. Ct. 1988). Here, PMC Property alleges the defect in the window systems caused damage to its other property because glass shattered on balconies, tenant patios, interior and other areas of the buildings. (Am. Compl. ¶ 79.)

Wausau and Viracon next contend PMC Property's manufacturing-defect claim is untimely. Relevant here, Pennsylvania has a two-year statute of limitations. *See* Pa. Stat. and Cons. Stat. § 5524. The statute of limitations begins to run when the party's right to institute the action arises. *Haugh v. Allstate Ins.*, 322 F.3d 227, 231 (3d Cir.

2003). A plaintiff has a right to institute an action when he knows or should know of his injury and its cause. *Dubose v. Quinlan*, 173 A.3d 634, 640 (Pa. Super. Ct. 2017). Given that a statute of limitations is an affirmative defense, not an element of a plaintiff's claim, a district court may dismiss a claim on statute-of-limitation grounds only if it is clearly time barred from the face of the pleading. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Here, the defendants make no effort to establish precisely when PMC Property's right to bring the manufacturing-defect claims arose. Thus, the Court cannot conclude that PMC Property's manufacturing-defect claims are clearly time barred.

Finally, Wausau and Viracon argue that PMC Property fails to allege sufficient facts to plausibly suggest a manufacturing defect. But PMC Property alleges that Viracon's glass was contaminated with nickel sulfide during the manufacturing process. According to PMC Property, properly manufactured glass for high-rise residential buildings does not contain nickel sulfide because it can cause glass to break during normal usage. These facts permit the reasonable inference that Viracon's glass departed from its intended design. *Tincher*, 104 A.3d at 404. The defendants respond that nickel sulfide is a latent defect, but they cite no Pennsylvania state case law for the proposition that latent defects cannot form the basis for a manufacturing-defect claim.

B

Implied warranties serve to protect buyers from loss where goods purchased are below certain standards. *See Gasbarre Prods., Inc. v. Link Computer Corp.*, No. 98-1228, 1999 WL 1808402, at *6 (Pa. C.P. July 21, 1999). Merchantability is a warranty

that "goods will pass without objection in the trade and are fit for the ordinary purposes for which such goods are used." *Borden, Inc. v. Advent Ink Co.*, 701 A.2d 255, 258 (Pa. Super. Ct. 1997) (citation omitted). Fitness is a warranty that "goods will perform a specific use envisaged and communicated by the buyer." *Gall ex rel. Gall v. Allegheny Cnty. Health Dep't*, 555 A.2d 786, 790 (Pa. 1989). Wausau argues that it disclaimed all implied warranties, including merchantability and fitness, in its contract with PMC Property.[3] Disclaimers must be in writing and conspicuous. *Borden, Inc.*, 701 A.2d at 259. Conspicuous means a reasonable person would have noticed the disclaimer. *Id.* Courts consider (1) the disclaimer's placement in the document; (2) the size of the disclaimer; and (3) whether the disclaimer was highlighted by, for example, capital letters. *Id.*

Wausau's disclaimers were in writing and conspicuous. The parties focus on one exhibit in particular. *See, e.g.*, (Pls.' Resp. to Defs.' Mot. to Dismiss at 23, Dkt. No. 17). In paragraph nine of a document called "The Wausau Standard Limited Warranty," the parties agreed: "WAUSAU MAKES NO OTHER WARRANTY, EITHER EXPRESSED OR IMPLIED, REGARDING THE PRODUCT, OR ITS SELECTION AND APPLICATION, INCLUDING, BUT NOT LIMITED TO; COMPLIANCE WITH BUILDING CODES, SAFETY CODES, LAWS, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE." (Wausau Standard Limited Warranty at 3, Dkt. No. 9-1.); *see also* (Pls.' Resp. to Defs.' Mot. to Dismiss at 23) (referring to this warranty as an agreement). Wausau clearly disclaimed the implied warranties of

---

[3] Wausau argues that all disclaimers it made are "effective" as to the warranty claims against Viracon, (Defs.' Mem. of L. in Supp. of Mot. to Dismiss at 23, Dkt. No. 16-2), and PMC Property does not claim otherwise.

merchantability and fitness here. The disclaimer appears on the second page of the parties' warranty agreement and stands out from its surrounding text because it is in all capital letters.

*Borden* does not change the calculus. There, the Pennsylvania Superior Court held a disclaimer was ineffective because it was in print "no larger than one-sixteenth inch in height." *Borden, Inc.*, 701 A.2d at 261. Unlike the disclaimer in *Borden*, the disclaimer here is in capital letters and the print is of normal height. *See, e.g.*, *Allen-Myland, Inc. v. Garmin Int'l, Inc.*, 140 A.3d 677, 689 (Pa. Super. Ct. 2016) (distinguishing *Borden* on the grounds that the disclaimer in that case "appeared in tiny typeface").

C

Unjust enrichment requires (1) the plaintiff conferred benefits to the defendant; (2) the defendant appreciated the benefits; and (3) it would be inequitable for the defendant to retain the benefits without payment of value. *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999). Unjust enrichment implies a contract where there isn't one between the parties and requires the defendant to pay the plaintiff the value of the benefit conferred. *Id.* Thus, a "cause of action for unjust enrichment arises only when a transaction is not subject to a written or express contract." *Ne. Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.*, 933 A.2d 664, 669 (Pa. Super. Ct. 2007).

PMC Property had a contract with Wausau, (Am. Compl. ¶ 5), so it cannot state a plausible unjust enrichment claim against Wausau. Viracon argues that PMC Property fails to allege that PMC Property directly conferred benefits on it. But PMC Property alleges Viracon profited from PMC Property's contract with Wausau. And in

Pennsylvania, a plaintiff can indirectly confer benefits on a defendant. *See Meehan v. Cheltenham Twp.*, 189 A.2d 593, 596 (Pa. 1963); *Limbach Co., LLC v. City of Philadelphia*, 905 A.2d 567, 577 (Pa. Commw. Ct. 2006) (explaining "where a third party benefits from a contract entered into between two other parties, the third party's retention of the benefit without paying any compensation to the aggrieved contracting party will not be unjust if the party enjoying the benefit did not" engage in misconduct); *see also Baker v. Fam. Credit Counseling Corp.*, 440 F. Supp. 2d 392, 420 (E.D. Pa. 2006) ("unjust enrichment simply requires that plaintiff 'confer' benefits on a defendant; it does not require that plaintiff 'directly confer' those benefits").

D

PMC Property also alleges Wausau and Viracon violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law by failing to disclose that the glass they supplied or manufactured could contain nickel sulfide. (Am. Compl. ¶ 125.) To prevail on this claim, PMC Property must allege the defendants had a duty to disclose the information at issue and their silence was, in essence, a representation that they had no information that needed to be disclosed. *Halpern v. Ricoh U.S.A., Inc.*, 353 A.3d 1264, 1275 (Pa. 2026). PMC Property points to no authority for the proposition that Wausau and Viracon had a legal duty to disclose that the glass they supplied or manufactured could contain nickel sulfide. It says only, without any legal support, that the defendants possessed "superior knowledge."

V

A court should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). A court need not give leave to amend if amendment would be futile.

*Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 113 (3d Cir. 2018). Amendment is futile if no new facts could fix the original complaint's problems. *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988). It would be futile for PMC Property to amend its claims against Apogee. The Court lacks personal jurisdiction over Apogee, and PMC Property does not come close to alleging Apogee controls the day-to-day operations of Wausau and Viracon. PMC Property, moreover, fails to suggest what facts it could add to its pleading to cure the jurisdictional problem. Nothing suggests another chance at amendment would change things. It would also be futile for PMC Property to amend its implied warranty claims against Wausau and Viracon and its unjust-enrichment claim against Wausau because these claims, from the face of the pleading, fail as a matter of law. Finally, the Court cannot at this point say that there are no facts or law to support PMC Property's allegation that the defendants had a duty to disclose the glass could contain nickel sulfide. PMC Property may amend its Unfair Trade Practice and Consumer Protection Law claim to the extent it can allege a basis for such a claim.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***

Gerald J. Pappert, J.